**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:23-CR-0192 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRELL CHANDLER COATES | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Defendant Tyrell Chandler Coates ("Coates") is charged in a two-count indictment with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). (Doc. 1.) Coates moves to dismiss both counts based on the argument that Sections 922(g)(1) and 922(k) violate the Second Amendment to the United States Constitution as applied to him. (Doc. 27.) For the reasons that follow, the court will deny the motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 19, 2023, Coates was charged in a two-count indictment with possession of a firearm by a prohibited person in violation of 18 U.S.C. §922(g)(1) (Count 1), and possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k) (Count 2). (Doc. 1.) The Government alleges that on August 30, 2022, Pennsylvania State Police Troopers conducted a traffic stop on a car driven by Coates at a gas station at the intersection of Herr and Cameron

1

Streets in Harrisburg, Pennsylvania for an inoperable left brake light and invalid temporary Texas registration.  (Doc. 47, p. 5.)[1]  After stopping his vehicle, Coates exited the car and fled on foot.  (*Id.*)  Two Troopers chased and located Coates and recovered approximately $269 in cash, a bag of suspected crack cocaine, and a bag of suspected marijuana.  (*Id.*)  Another Trooper responded and observed through the car window a handgun that was partially under the driver's seat.  (*Id.*)  The gun was recovered and found that there was one round in the gun's chamber, thirteen rounds in the magazine, and the serial number had been intentionally scratched off.  (*Id.* at 5–6.)  Coates admitted that he knew the gun was in the car and he touched it, but denied that it was his.  (*Id.* at 6.)

Coates is alleged to have violated Section 922(g)(1) because he possessed a firearm on August 30, 2022, which was shipped and transported in interstate and foreign commerce, after he was previously convicted of at least one crime punishable by imprisonment for a term of more than one year.  (Doc. 1.)  Coates is also alleged to have violated Section 922(k) because he possessed a firearm on August 30, 2022, which was shipped and transported in interstate commerce, from which the manufacturer's serial number had been removed, altered, and obliterated.  (*Id.*)  The Government asserts that Coates has several convictions that disqualify him from possession of firearms pursuant to Section 922(g)(1),

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

including Pennsylvania convictions for robbery and criminal conspiracy to commit robbery in 2005, felony drug trafficking and flight to avoid apprehension in 2015, and drug delivery resulting in death in 2023.  (Doc. 47, p. 4–5.)

On May 23, 2024, Coates filed a motion to dismiss the indictment, as well as a brief in support, based on the argument that the application of Sections 922(g)(1) and 922(k) to him violates the Second Amendment.  (Docs. 27, 28.)

On May 30, 2024, this court entered an order staying the briefing and resolution of the motion to dismiss pending the Third Circuit Court of Appeals' review of the consolidated appeal in *United States v. Quailes*, No. 23-2533 (3d Cir. 2023).  (Doc. 31.)  Following the Third Circuit's decision in that appeal, the court directed the parties to confer and determine whether *Quailes* and *United States v. Moore*, 111 F. 4th 266 (3d Cir. 2024) applied to the facts of this case, namely, whether Coates was serving a term of supervised release, probation, or parole for any state or federal criminal offense at the time when he is alleged to have committed the violations in this case.  (Doc. 39.)  The parties complied and notified the court that Coates was not on state or federal probation, parole, or supervision at the time of the offenses alleged in the indictment.  (Doc. 40.)  Thereafter, the court directed the parties to submit supplemental briefs to address the impact of relevant decisions issued while Coates's motion to dismiss was stayed.  (Docs. 43, 44, 47, 48.)

This matter is currently listed for trial on August 4, 2025.  (Doc. 42.)  Coates has been detained since his initial appearance and arraignment on August 17, 2023. (*See* Doc. 17.)

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  FED. R. CRIM. P. 12(b)(1).  In his pretrial motion to dismiss, Coates asserts an as-applied challenge to the constitutionality of Sections 922(g)(1) and 922(k).  (*See* Docs. 27, 28, 44, 48.)  In order to resolve an as-applied challenge, the court determines whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's conduct.  *Spence v. Washington*, 418 U.S. 405, 414 (1974).

## DISCUSSION

Coates argues that both Section 922(g)(1) and Section 922(k) violate the Second Amendment as they are applied to him in the indictment.  The court will begin by discussing several significant rulings regarding the Second Amendment, and then discuss the application of the recent precedent to each of Coates's arguments.

## A. The Text of the Second Amendment and Significant Rulings on the Second Amendment

The text of the Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. amend. II.

### 1. Supreme Court Precedent from *Heller* to *Rahimi*

There was a sea change in the Supreme Court's analysis of the Second Amendment from the militia-based rationale articulated in *United States v. Miller*, 307 U.S. 174 (1939), to the pre-existing individual right explained in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010).  In those decisions, the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *New York State Rifle Association v. Bruen*, 597 U.S. 1, 8–9 (2022) (citing *Heller*, 554 U.S. at 570; *McDonald*, 561 U.S. at 742).  And then, in 2022, the Court held in *Bruen* "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."  *Id.*

Importantly, in *Bruen*, the Court established a two-step test to determine if a particular regulation violates the Second Amendment:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, . . . the

> government must demonstrate that the regulation is consistent with this
> Nation's historical tradition of firearm regulation. Only if a firearm
> regulation is consistent with this Nation's historical tradition may a
> court conclude that the individual's conduct falls outside the Second
> Amendment's "unqualified command."

*Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)).

To measure consistency with historical firearm regulations, the modern regulation must be "relevantly similar" to historical predecessors. *Id.* at 29. The Court explained that the burden on the Government is to identify a "well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30. And then, in *United States v. Rahimi*, 602 U.S. 680 (2024), the Court clarified that, when conducting *Bruen's* history-and-tradition inquiry, "the appropriate analysis . . . [is] whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." 602 U.S. at 692. The Court rejected the idea that the examination of historical analogues signals "a law trapped in amber." *Id.* at 691.

### 2. Third Circuit Precedent Applying *Bruen* and *Rahimi*

The Third Circuit had occasion to apply both *Bruen* and *Rahimi* in the appeal filed in the *Range* case. This appeal has traveled a long procedural road to finality. In 2020, Bryan Range filed suit in the Eastern District of Pennsylvania, seeking a declaration that Section 922(g)(1) violates the Second Amendment as

applied to him.  Applying then-controlling Third Circuit precedent, *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), *Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016) (en banc) (plurality), *Holloway v. Attorney General*, 948 F.3d 164 (3d Cir. 2020), and *Folajtar v. Attorney General*, 980 F.3d 897 (3d Cir. 2020), the district court granted summary judgment to the Government.  *Range v. Lombardo*, 557 F. Supp. 3d 609, 611, 613–14 (E.D. Pa. 2021).  Range appealed.

While his appeal was pending, the Supreme Court decided *Bruen*.  A Circuit panel affirmed the district court decision, applying *Bruen* and concluding that the Government met its burden to show that Section 922(g)(1) reflects the Nation's historical tradition of firearm regulation.  *Range v. Att'y Gen.*, 53 F.4th 262, 266 (3d Cir. 2022) (per curiam).  Range petitioned for rehearing en banc, and the Circuit granted the petition and vacated the panel opinion.  *Range v. Att'y Gen.*, 56 F.4th 992 (3d Cir. 2022).  The en banc court reversed and remanded for the District Court to enter judgment in favor of Range, finding that Range remained one of "the people" protected by the Second Amendment and the Government did not show that the Nation has a longstanding history and tradition of disarming people like Range.  *Range v. Att'y Gen.*, 69 F.4th 96, 98 (3d Cir. 2023) (en banc) ("*Range I*").

The Government filed a petition for writ of certiorari.  While that petition was pending, the Supreme Court decided *Rahimi*.  The Court then vacated *Range I*

and remanded for further consideration.  *Garland v. Range*, 144 S. Ct. 2706 (2024).

In the second en banc opinion following remand, the Third Circuit reached the same conclusions as in *Range I*.  The Circuit concluded that Bryan Range remains one of "the people" for purposes of the Second Amendment notwithstanding his prior conviction.  *Range v. Attorney General*, 124 F.4th 218, 226–28 (3d Cir. 2024) ("*Range II*").  The Circuit next concluded that Section 922(g)(1) regulates Second Amendment conduct and "'the Constitution presumptively protects that conduct.'"  *Id.* at 228 (quoting *Bruen*, 597 U.S. at 17).  The Circuit then examined whether the Government had shown that applying Section 922(g)(1) to Range would be "'consistent with the Nation's historical tradition of firearm regulation'" and concluded that it had not carried its burden.  *Id.* (quoting *Bruen*, 597 U.S. at 24).  The Third Circuit concluded its analysis as follows:

> Our decision today is a narrow one.  Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann. § 481(a).  Range remains one of "the people" protected by the Second Amendment, and his eligibility to lawfully purchase a rifle and a shotgun is protected by his right to keep and bear arms.  More than two decades after he was convicted of food-stamp fraud and completed his sentence, he sought protection from prosecution under § 922(g)(1) for any future possession of a firearm.  The record contains no evidence that Range poses a physical danger to others.  Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of

their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights.

*Id.* at 232.

Soon after *Range II* was decided, the Third Circuit addressed another civil case in which a plaintiff convicted of a felony offense brought suit seeking a declaration that application of Section 922(g)(1) to him would violate the Second Amendment. *Pitsilides v. Barr*, 128 F. 4th 203 (3d Cir. 2025). Upon examination of *Bruen*, *Rahimi*, and *Range II*, the Court explained the "upshot of these cases." *Id.* at 210–11. First, a court's "inquiry into *principles* that underlie our regulatory tradition does not reduce historical analogizing to an exercise in matching elements of modern laws to their historical predecessors." *Id.* at 210 (emphasis supplied). Second, "whatever other recourse may or may not be available, felons seeking to challenge the application of § 922(g)(1) at least may bring declaratory judgment actions" and relief may be granted on a record sufficient to enable "individualized fact-finding." *Id.* Finally, "while *Rahimi* and *Range II* did not purport to comprehensively define the metes and bounds of justifiable burdens on the Second Amendment right, they do, at a minimum, show that disarmament is justified as long as a felon continues to 'present a special danger of misus[ing firearms],' in other words, when he would likely 'pose[] a physical danger to others' if armed." *Id.* (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232). The *Pitsilides* decision makes clear that the "'Second Amendment's touchstone is

9

dangerousness.'"  *Id.* at 210–11 (quoting *Folajtar*, 980 F.3d at 924 (Bibas, J.,

dissenting); citing *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J.,

dissenting), *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per

curiam), *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024), and *United

States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024)).

Ultimately, the Court remanded to the District Court for additional discovery

probative "to the prevailing Second Amendment analysis, including whether

Pitsilides poses a special danger of misusing firearms in a way that would endanger

others."  *Pitsilides*, 128 F.4th at 213.  However, the Court instructed that:

> Courts adjudicating as-applied challenges to § 922(g)(1) must consider
> a convict's entire criminal history and post-conviction conduct
> indicative of dangerousness, along with his predicate offense and the
> conduct giving rise to that conviction, to evaluate whether he meets the
> threshold for continued disarmament.  As *Range II* illustrated,
> consideration of intervening conduct plays a crucial role in determining
> whether application of § 922(g)(1) is constitutional under the Second
> Amendment.  *See* 124 F.4th at 232.  Indeed, such conduct may be highly
> probative of whether an individual likely poses an increased risk of
> "physical danger to others" if armed.  *Id.*

*Id.* at 212.  That is because an individual may be disarmed "consistent with the

historical principle that legislatures may disarm a person who poses a danger to the

physical safety of others."  *Id.* (citing *Rahimi*, 602 U.S. at 693; *Range II*, 124 F.4th

at 232; *Bullock*, 123 F.4th at 185; *Williams*, 113 F.4th at 662; and *Jackson*, 110

F.4th at 1128.)  Further, the Court observed that "both history and common sense

reflect that this 'dangerousness' includes not only direct involvement in physical

violence" but also conduct that is "'dangerous because [it] often lead[s] to violence,'" such as burglary and drug dealing.  *Id.* at 213 (quoting *Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting); citing *Williams*, 113 F.4th at 659).  This assessment "necessarily requires individualized factual findings."  *Id.*

The Third Circuit has issued two non-precedential decisions in criminal cases following the decisions in *Range II* that provide additional guidance relevant to this matter.  In *United States v. White*, No. 23-3013, 2025 WL 384112, at *2 (3d Cir. Feb. 4, 2025), *petition for cert. filed*, No. 24-7158 (May 8, 2025), the Court rejected the Second Amendment challenge to Section 922(g)(1) because White's "prior felony convictions for drug distribution, aggravated assault, and carrying a firearm without a license demonstrate that he 'present[s] a special danger of misus[ing firearms],' and would likely pose an increased risk of 'physical danger to others' if armed."  2025 WL 384112, at *2 (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232).  Looking at White's entire criminal history, the Court concluded that his convictions, considered collectively, show that White would pose a danger to others if armed because his prior criminal activities could lead to violent confrontation.  *Id.* (citing *Williams*, 113 F.4th at 659 for the proposition that legislatures may disarm those convicted of crimes like drug dealing because such crimes pose a significant threat of danger, warranting disarmament).

In *United States v. Williams*, No. 23-2773, 2025 WL 1341877, at *2 (3d Cir. May 8, 2025), the Court concluded that the District Court did not commit plain error in rejecting Williams' Second Amendment challenge. That is because Williams has a lengthy criminal history that distinguished him from Bryan Range, including two convictions for possession of cocaine with intent to distribute, one conviction for possession of marijuana with intent to distribute, and one conviction for child endangerment. *Id.* Given Williams' "dramatically different criminal record," the Circuit's narrow holding in *Range II* did not compel the dismissal of the Section 922(g)(1) conviction. *Id.*

Finally, there are two additional precedential decisions from the Third Circuit that provide additional guidance with respect to the analysis of a Second Amendment challenge to Section 922(g)(1). In *United States v. Moore*, 111 F.4th 266, 273 (3d Cir. 2024), *petition for cert. filed*, No. 24-968 (Mar. 7, 2025), the Third Circuit held that "[a] convict completing his sentence on [federal] supervised release does not have a Second Amendment right to possess a firearm." And, in *United States v. Quailes*, 126 F.4th 215, 224 (3d Cir. 2025), *petition for cert. filed*, No. 24-7033 (Apr. 18, 2025), the Third Circuit extended the holding in *Moore* to individuals on state parole or probation. However, this precedent is not controlling in this case because the defendant was not on any form of supervision at the time of the alleged offense conduct.

### B. Application of Recent Precedent to Coates's Arguments

The court will first address the application of above precedent to Coates's

argument that Section 922(g)(1) is unconstitutional as applied to him.

### 1. The Parties' Arguments Regarding the Constitutionality of Section 922(g)(1) As Applied to Coates

Coates argues that *Bruen* and *Range I* makes Section 922(g)(1)

unconstitutional on its face and as-applied to him.[2]  (Doc. 28, pp. 2–4.)  According

to Coates, *Range I* affirmed that he has Second Amendment rights, he's one of the

people, and that his conduct falls within the Second Amendment.  (*Id.* at 4–7.)  In

his supplemental brief, Coates discusses the impact of the cases decided while his

motion was stayed and submits that *Range II* reaffirmed *Range I* and the *Bruen*

two-step framework.  (Doc. 44, pp. 3–5.)  Based on this, Coates argues that the

Government still cannot meet its burden of showing that permanent disarmament

of Coates is consistent with the history and tradition of this Nation.  (*Id.*)

The Government concedes that Coates is one of "the people" protected by

the Second Amendment pursuant to *Range II*, but argues that Coates's motion

should be denied because the prohibition on firearm possession in Section

922(g)(1) as applied to Coates is supported by relevant historical tradition.  (Doc.

---

[2] Although Coates states that he is challenging Section 922(g)(1) on its face, other than these words and an argument regarding vagueness raised for the first time in his supplemental reply brief, no argument is set forth supporting this challenge.

47, pp. 7–27.)  In making this argument, the Government conducts a "dangerousness" analysis and submits that Coates's possession of a firearm poses a particular danger because of his prior convictions.  (*Id.* at 25–27.)

In his supplemental reply brief, Coates responds to the Government's argument regarding dangerousness submitting that:

> Simply because other judges in other settings have observed that "drugs and guns are a dangerous combination," does not mean that Mr. Coates' as-applied challenge to §922(g)(1) can be determined without a factual record.  Nor is it appropriate in an as-applied challenge to consider Mr. Coates' prior convictions (were they to be established by record evidence) in a categorial way because an as-applied challenge is an individualized inquiry.

(Doc. 48, pp. 2–6.)  And, for the first time, Coates argues that the "dangerousness" requirement creates vagueness in Section 922(g)(1) that rises to the level of a due process violation rendering the statute facially unconstitutional.  (*Id.* at 7–8.)

## 2. Application of Relevant Precedent to Defendant's Second Amendment Challenge to Section 922(g)(1)

### a. *Bruen* Step One Analysis

The first question is whether the text of the Second Amendment applies to Defendant and his proposed conduct.  *See Bruen*, 597 U.S. at 31–33; *Range II*, 124 F.4th at 225; *Pitsilides*, 128 F.4th at 209.  Here, the Government concedes that Coates remains among "the people" despite his felony convictions.  (Doc. 47, pp. 12–13.)  Rightfully so, based on the controlling precedent in *Range II* concluding

that an individual who has a felony conviction remains among "the people."  *See*

*Range II*, 124 F.4th at 228.

In *Range II*, the Court characterized "the easy question" as "whether

§ 922(g)(1) regulates Second Amendment conduct." 124 F.4th at 228.  The Court

then stated: "It does."  *Id.*  In relevant part, the statute makes the possession of any

firearm or ammunition unlawful for a person convicted of an offense punishable by

imprisonment for a term exceeding one year.  18 U.S.C. § 922(1).  The statute

criminalizes the possession of any firearm or ammunition for any purpose (lawful

or otherwise) by this class of persons.  And it appears that the Circuit determined

in *Range II* that this regulation of this specific conduct is clearly covered by the

Second Amendment.

The court also notes that in the non-precedential *White* decision, where the

criminal defendant argued that Section 922(g)(1) is unconstitutional as applied to

him, the Circuit did not address the first *Bruen* question at all, and only addressed

the second *Bruen* question.  2025 WL 384112 at *2.  Since *Bruen* instructs that the

second step of conducting a historical tradition analysis is only necessary when the

person and his conduct are covered by the Second Amendment, 597 U.S. at 24, this

may suggest that the Circuit has determined that the first *Bruen* question did not

require further discussion in the context of a Second Amendment challenge to

Section 922(g)(1).  On the other hand, it may suggest that when a defendant's

15

challenge fails at the second *Bruen* step, as was the case in *White*, it is not necessary to analyze the first *Bruen* step.  In any event, the Circuit clearly did not analyze whether the defendant in *White* stated a purpose for his possession of a firearm.

### b. *Bruen* Step Two Analysis

Having determined that the defendant and his conduct are covered by the Second Amendment and presumptively protected, the court must next determine "whether the Government can strip him of his right to keep and bear arms" by analyzing whether application of Section 922(g)(1) to this defendant is "'consistent with the Nation's historical tradition of firearm regulation.'"  *Range II*, 124 F.4th at 228 (quoting *Bruen*, 597 U.S. at 24); *see also Pitsilides*, 128 F.4th at 209.

The court's analysis of the *Bruen* step two question is guided by the controlling precedent in *Range II* and *Pitsilides*.  As detailed previously, the court will assess this question according to "the prevailing Second Amendment analysis, including whether [the individual at issue] poses a special danger of misusing firearms in a way that would endanger others."  *Pitsilides*, 128 F.4th at 213.  The court will consider the defendant's "entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament."  *Pitsilides*, 128 F. 4th at 212.  That is because an

individual may be disarmed "consistent with the historical principle that legislatures may disarm a person who poses a danger to the physical safety of others." *Id.*; *see also Range II*, 124 F.4th at 230 (citing *Rahimi* in support of the proposition that disarming (at least temporarily) physically dangerous people based on a finding that such person poses a safety threat is consistent with the historical tradition of disarming people who pose a clear threat of physical violence to another); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024); *United States v. Williams*, 113 F.4th 637, 649–663 (6th Cir. 2024).

In conducting this analysis, the court is mindful of the narrowness of the *Range II* holding. The Circuit found only that our Nation's history and tradition do not support permanent disarmament of Bryan Range who only has a two-decades old conviction for food-stamp fraud and there is no evidence of ongoing recidivism or threat of physical danger to others. *See Range II*, 124 F.4th at 232. In assessing whether the criminal record and available background information about the defendant in this case lead to the conclusion that the defendant is, in fact, sufficiently dangerous so that the application of Section 922(g)(1) to him is consistent with the Second Amendment, the court will view Bryan Range as one data point on the dangerousness spectrum, specifically, on the far end of non-dangerousness.

The Government contends that applying Section 922(g)(1) to Coates is constitutional because his felony robbery and drug trafficking offenses are "serious and indicate that his firearm possession would pose a danger to himself or others." (Doc. 47, p. 25.)  The Government submitted the Commonwealth of Pennsylvania docket numbers for Coates's prior convictions, which includes felony convictions for robbery and criminal conspiracy to commit robbery in 2005, and drug trafficking and flight to avoid apprehension in 2015.[3]  (*Id.* at 4.)  The Government points to another felony conviction, drug delivery resulting in death, which has an offense date of July 6, 2018, and conviction date of September 28, 2023.[4]  The Government notes that Coates has other felony convictions, including criminal use of a communication facility, identity theft, access device fraud, and another flight to avoid apprehension.  (Doc. 47, pp. 4–5.)  The Government submits that the prior felony robbery and drug trafficking convictions alone provide a basis to reject Coates's constitutional challenged based on the demonstrated dangerousness of drug trafficking crimes in combination with firearms.  (Doc. 47, pp. 25–27.)

Contrasting this case with *Pitsilides*, Coates maintains that the Government cannot use his criminal history in a pretrial posture to support the dangerousness

_____

[3] For each case, the court reviewed the docket sheets on the Unified Judicial System of Pennsylvania web portal to verify the convictions.  *See* THE UNIFIED JUD. SYS. OF PA. WEB PORTAL, https://ujsportal.pacourts.us/CaseSearch (last visited July 23, 2025).

[4] The court takes note that the offense date is prior to the indicted crimes at issue before this court, but the conviction date is after the indictment was filed in the instant case.

inquiry because facts have not been established through a jury trial.  (Doc. 48, pp.

3–4.)  Coates submits that "while some of the Government's argument that

categories of felons such those with prior convictions for drug trafficking or

robbery can be permanently dispossessed might seem alluring, there is no factual

record of Mr. Coates' criminal history upon which this Court could predicate its

reasoning."  (*Id.* at 4.)

Addressing Coates's argument that the court cannot apply *Pitsilides* in the

criminal motion to dismiss context, this court is not aware of any reason why the

Circuit's analysis of the *Bruen* step two determination would apply with any less

force in the context of a motion to dismiss a charge in a criminal prosecution than

in a declaratory judgment action.  In each matter, the court is required to determine

whether the Government's disarmament of an individual due to a prior conviction

is consistent with the Nation's historical tradition of firearm regulation.

Having considered both parties' arguments, the court concludes that

Coates's prior convictions for felony drug trafficking and robbery demonstrate that

Coates presents a danger of misusing firearms and would likely pose an increased

risk of physical danger to others if permitted to be armed.  *See White*, 2025 WL

384112 at *2 (holding that defendant's prior criminal convictions for possession

with intent to distribute controlled substances, aggravated assault, and carrying an

unlicensed firearm "shows that he would pose such a danger to others if armed

because those activities could lead to violent confrontation"); *Williams*, 113 F.4th at 663 (holding that a person convicted of a crime is dangerous and can be disarmed if he has committed, among others, "a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary"); *Williams*, 2025 WL 1341877 at *2 (holding that prior convictions for possession with intent to distribute cocaine and marijuana and child endangerment constitute a "dramatically different criminal record" than Bryan Range for purposes of Second Amendment analysis); *Mollett*, 2025 WL 564885 at *7 (holding that three prior convictions for drug trafficking less than two years prior to the Section 922(g)(1) offense support the conclusion that defendant presented a special danger of misusing firearms and was subject to disarmament).[5] Defendant's other prior convictions–though not necessarily sufficient individually to establish the requisite degree of dangerousness–when considered in combination

---

[5] *See also United States v. Birry*, No. 3:23-cr-288, 2024 WL 3540989, at *8 (M.D. Pa. July 25, 2024) (finding that two prior convictions for possession with intent to distribute methamphetamine showed defendant posed a credible threat to public safety); *United States v. Roach*, No. 2:24-cr-77, 2025 WL 871618, at *2 (E.D. Pa. Mar. 20, 2025) (discussing that "drug dealing" convictions establish a defendant's dangerousness); *United States v. Trusty*, 2025 WL 830124, at *5 (D.N.J. Mar. 17, 2025) (holding that defendant's four "prior drug offenses *were* dangerous because *drug dealing* is inherently dangerous"); *United States v. Smith*, No. 24-cr-326, 2025 WL 1399997, at *3 (E.D. Pa. May 14, 2025) (finding that robbery is "plainly dangerous"); *United States v. Feliciano-Seize*, No. , 2025 WL 1184113, at *6 (collecting cases finding robbery and armed robbery to be "conclusive evidence that someone poses a special danger of misusing firearms").

with the drug trafficking and robbery convictions, demonstrate Coates's historical involvement in dangerous and recidivist criminal conduct.

Coates's argument that the dangerousness standard creates a vagueness in Section 922(g)(1) that rises to the level of a due process violation making the statute facially unconstitutional also fails.  (*See* Doc. 48, pp. 7–8.)  First, this argument was raised for the first time in Coates's supplemental reply brief and the Government has not had an opportunity to respond.  Thus, as a procedural matter, the court will not review an argument raised for the first time in a reply brief.  Even so, this is not a colorable argument because Coates fails to show how Section 922(g)(1) is unconstitutional as applied to him, which is required to sustain a facial vagueness challenge.  *See United States v. Harris*, No. 21-3031, --- F.4th ----, 2025 WL 1922605, at *9 (3d Cir. 2025) ("The Supreme Court has long held that, with few exceptions, a defendant whose conduct is 'clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'")

Based on this comprehensive review of Coates's criminal record, it is clear that Coates presents a far greater risk of dangerousness than Bryan Range if permitted to be armed.  Thus, based on the above analysis, the court concludes that Section 922(g)(1) is not unconstitutional as applied to Coates.

### 3.  Application of Relevant Precedent to Defendant's Second Amendment Challenge to Section 922(k)

Section 922(k) provides:

It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(k).

Coates argues that the Government cannot meet its burden of showing that Section 922(k) is consistent with this Nation's history and tradition of firearm regulation.  (Doc. 28, p. 9.)  He submits that the first legal requirement for serial numbers did not appear until 1934, and thus, was not required at the founding of the Nation.  (*Id.*)  The Government argues that possessing a firearm with an obliterated serial number is not protected by the Second Amendment for two reasons.  (Doc. 47, pp. 28–39.)  First, "firearms with obliterated serial numbers are not 'typically possessed by law-abiding citizens for lawful purposes,' even putting aside Section 922(k)'s prohibition on such possession."  (*Id.* at 30.)  Second, the Government submits that Section 922(k)'s prohibition does not 'infringe' on the central right protected by the Second Amendment: the right to armed self-defense."  (*Id.* at 30–31.)  Thus, the Government argues that even if the conduct regulated by Section 922(k) is protected by the Second Amendment's plain text, Section 922(k)

is constitutional because it is consistent with the Nation's tradition of firearm regulation.  (*Id.* at 32–39.)

In support of his motion to dismiss, Coates largely relies on *United States v. Price*, 635 F.Supp.3d 455 (S.D.W. Va. 2022), which found that Section 922(k) was unconstitutional because it infringed on conduct protected by the plain text of the Second Amendment, and the Government had not met its burden of showing a sufficient historical analogue.  *Price*, 635 F.Supp.3d at 457.  As required by *Bruen*, the *Price* court began with the question of whether Section 922(k) prohibits conduct that is within the scope of the plain text of the Second Amendment.  *Id.* at 459.  The court found that § 922(k) is not a commercial regulation, but rather, "a blatant prohibition on possession" because it "criminalizes the mere *possession* of a firearm after a serial number is removed, obliterated, or altered in any way, whether or not the firearm is then placed into commerce."  *Id.* at 460.

However, since Coates's original briefing on this issue, *Price* was reversed by the United States Court of Appeal for the Fourth Circuit.  *United States v. Price*, 111 F.4th 392 (4th Cir. 2024).  The Fourth Circuit, in an *en banc* decision, held that "the conduct regulated by § 922(k) does not fall within the scope of the right enshrined in the Second Amendment because a firearm with a removed, obliterated, or altered serial number is not a weapon in common use for lawful purposes."  *Id.* at 397.

23

With exception to the district court in *Price*, which was reversed, all courts have found that Section 922(k) is constitutional, for a variety of reasons. At the first step of the *Bruen* analysis, some courts, such as the Northern District of Texas in *United States v. Holton*, 639 F.Supp.3d 704, 710–11 (N.D. Tex 2022), have found that § 922(k) does not "infringe on an individual's right to bear arms for self-defense" because "[t]he Second Amendment 'is not a right to keep and carry any weapon whatsoever in any manner whatsoever.'" *Holton*, 639 F.Supp.3d at 710–11 (citing *Heller*, 554 U.S. at 626). Thus, "[w]hile § 922(k) may restrict one manner in which individuals may keep and carry firearms, this restriction does not infringe on an individual's right to bear arms for self-defense." *Id.*; *see also United States v. Tita*, No. RDB-21-0334, 2022 WL 17850250, at *7 (D. Md. Dec. 22, 2022); *United States v. Serrano*, 651 F.Supp.3d 1192, 1210 (S.D. Cal 2023); *United States v. Bradley*, No. 2:22-CR-00098, 2023 WL 2621352, at *3 (S.D.W. Va. March 23, 2023); *United States v. Avila*, 672 F.Supp.3d 1137, 1144 (D. Colo. 2023) (collecting cases); *United States v. Patton*, 4:21-CR-3084, 2023 WL 6230413, at *1–2 (D. Neb. Sept. 26, 2023) (collecting cases); *United States v. Sing-Ledezma*, No. EP-23-CR-823(1)-KC; 2023 WL 8587869, at *3 (W.D. Texas Dec. 11, 2023) (collecting cases).

Other courts, such as the Northern District of Indiana in *United States v. Reyna*, No. 3:21-CR-41, 2022 WL 17714376 (N.D. Ind. Dec. 15, 2022), have

found that "[g]uns with obliterated serial numbers belong to 'those weapons not typically possessed by law-abiding citizens for lawful purposes' so possession of such guns isn't within the Second Amendment's scope." *Reyna*, 2022 WL 17714376 at *5. The *Reyna* court noted that "[g]uns with obliterated serial numbers are useful for criminal activity because identifying who possessed a firearm is more difficult when the serial number is destroyed. By using a gun without a serial number, a criminal ensures he has a greater likelihood of evading justice." *Id.* (citing *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010)).[6]

Within this Circuit, this court and the District Court of the Virgin Islands have found Section 922(k) constitutional. As explained by the court in *United States v. Dangleben*, 3:23-MJ-9944, 2023 WL 6441977 (D.V.I. Oct. 3, 2023),[7] "the regulated conduct at issue here is not the mere possession of any firearm but rather the possession of a firearm with a removed, obliterated, or altered serial number." *Dangleben*, 2023 WL 6441977, at *4. "Regulated conduct is only within the scope

---

[6] In *Marzzarella*, the Third Circuit found Section 922(k) constitutional after applying means-end scrutiny. Thus, while the holding of this case is no longer binding, much of the Third Circuit's discussion on the utility of firearms with obliterated serial numbers has been incorporated into the analysis in cases decided post-*Bruen*.

[7] The court notes that the District Court of the Virgin Islands first considered the issue in *United States v. Walter*, No.3:23-CR-0039, 2023 WL 3020321, at * 5 (D.V.I. Apr. 20, 2023). However, the court finds the discussion contained in *Dangleben* more thorough and instructive, and thus, discusses *Dangleben* here. In *Walter*, the District Court for the Virgin Islands found that Section 922(k) was constitutional because "firearms with obliterated serial numbers are not typically used by law-abiding citizens for lawful purposes." *Walter*, 2023 WL 3020321 at *5 (citing *Reyna*, 2022 WL 17714376, *Holton*, 639 F.Supp.3d at 710–11.)

of the Second Amendment if the regulation 'infringe[s]' on 'a law-abiding citizen's right to armed self-defense.'" *Id.* at *5. Thus, "because a person can defend themselves just as effectively with a serialized or deserialized firearm, there is nothing about § 922(k)'s prohibition that limits an individual's right to bear arms and defend oneself in the case of confrontation." *Id.*

As this court did in *United States v. Brabham*, No. 21-cr-342, 2024 WL 3165467 (M.D. Pa. June 24, 2024), this court joins the majority of district courts that have addressed this issue to date, and concludes that the conduct prohibited by Section 922(k) is not within the scope of the plain text of the Second Amendment. Section 922(k) regulates possessing a firearm with an obliterated serial number. *Id.* at *5 (citing *Dangleben*, 2023 WL 6441977, at *4). A firearm without a serial number is not necessary for a law-abiding citizen's right to self-defense, which is the conduct at the heart of the Second Amendment. *Id.*; *see also Bruen*, 597 U.S. at 17 ("In *Heller* and *McDonald*, we held that the Second and Fourth Amendments protect an individual right to keep and bears arms for self-defense.") Therefore, a law criminalizing the possession of a firearm without a serial number does not infringe on one's right to bear arms for self-defense, making Section 922(k) outside the scope of the Second Amendment. Thus, Coates's motion to dismiss will be denied on these grounds.

## CONCLUSION

For the foregoing reasons, Coates's motion to dismiss the indictment, Doc. 27, will be denied.  An implementing order will follow.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated:  July 31, 2025